In Re: Appeal of the Board of Supervisors of Solebury Township, Bucks County, Pennsylvania, etc. R & L Marino Bros., Inc. v. The Zoning Hearing Board of Solebury Township. Board of Supervisors of Solebury Township, Appellant.

In Re: Appeal of the Board of Supervisors of Solebury Township, Bucks County, Pennsylvania, etc. R & L Marino Bros., Inc., Appellant v. The Zoning Hearing Board of Solebury Township, Appellee.

268

Argued October 3, 1979, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Stuart N. Cohen*, with him, of counsel, *Butera, Hess, Beausang & Moyer,* for appellant.

*Carl L. Lindsay, Jr.*, for appellee.

OPINION BY JUDGE MENCER, February 7, 1980:

R & L Marino Bros., Inc. (Marino) and the Board of Supervisors of Solebury Township (Township) have cross-appealed an order of the Court of Common Pleas of Bucks County, which affirmed the grant of a variance to Marino to erect an apartment building, subject to certain conditions.[1] Marino challenges both the imposition of a density condition attached to the variance and the constitutionality of the ordinance, and the Township challenges the grant of the variance.

Marino is the equitable owner of 7.28 acres of undeveloped land which is located on Route 202 between an existing Holiday Inn and about 28 acres of Pennsylvania Fish and Game Commission land. To the rear of Marino's land are single-family houses within a subdivision. The land is situated in an R-2 zoning district which permits single-family residential use on minimum 2-acre lots, among other uses. Marino applied for a variance in order to construct a 4-story, 70-unit apartment building with onsite parking, an outside swimming pool, and a tennis court.

Where the court below receives no evidence, as here, our review on appeal is limited to a determination of whether the Board has abused its discretion or committed an error of law. *Ottaviano v. Zoning Board*

---

[1] The conditions were as follows:

   (a) The Applicant shall comply with all of the requirements of Article 9—Residential Development District—of the Solebury Township Zoning Ordinance as amended March 20, 1978, except that the density requirements contained therein in Section 904(2)h shall not apply but instead, the Applicant shall be permitted to construct 49 dwelling units on the subject property.

   (b) The Applicant shall comply with all of the requirements of the BOCA Building Code.

The validity of condition (b) has not been raised on this appeal.

*of Adjustment of Philadelphia,* 31 Pa. Commonwealth Ct. 366, 376 A.2d 286 (1977).

An applicant is entitled to a variance only where he establishes (1) that the zoning regulation uniquely burdens his property so as to create an unnecessary hardship and (2) that the variance would not have an adverse effect upon the public health, safety or welfare. *H. A. Steen Industries, Inc. v. Zoning Hearing Board of Bensalem Township,* 39 Pa. Commonwealth Ct. 451, 396 A.2d 66 (1978); *Hankin v. Zoning Hearing Board of West Norriton Township,* 35 Pa. Commonwealth Ct. 164, 384 A.2d 1386 (1978). *See also* Section 912 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10912.

Marino presented expert testimony that the topography of the property, the nearby commercial uses, especially the Holiday Inn, and the heavy volume of traffic on Route 202 make the property unsuitable for development in conformity with the present zoning. In addition, there was testimony that there was no market for the property as zoned. Finally, there was evidence that the proposed use would not be detrimental to the public welfare. After a careful review of the record, we conclude that there is sufficient evidence to support the Board's conclusion that a variance was justified and that the Board did not abuse its discretion.

Marino argues, however, that the Board abused its discretion by imposing conditions upon the grant of the variance which require Marino to comply with the provisions of the Township's Residential Development District (RDD) and which limit the development to 49 apartment units.

Section 912 of the MPC provides that, in granting a variance, "the board may attach such reasonable conditions and safeguards as it may deem necessary to

implement the purposes of this act and the zoning ordinance." The conditions imposed must bear a reasonable relation to the protection of the public interest, *see VanSciver v. Zoning Board of Adjustment,* 396 Pa. 646, 152 A.2d 717 (1959), and be reasonable under the facts of the case, *see Fifty-Fourth Street Center, Inc. v. Zoning Board of Adjustment,* 395 Pa. 338, 150 A.2d 335 (1959).

This is an extension of the Board's power to deny a variance where, though a hardship has been established, it has not been shown to the Board's satisfaction that the proposed use would not be adverse to the public interest. "Since a zoning board has power to deny an application where the evidence shows that it would be contrary to the public interest, it necessarily possesses the lesser power to impose restrictions on the permit designed to eliminate its objectionable features." R. Ryan, *Pennsylvania Zoning* §9.4.18 (1970). *See Fifty-Fourth Street Center, Inc., supra.* This suggests that, in order to impose conditions, there must be a determination that the application, if granted, would be detrimental to the public interest. *See* R. Ryan, *supra* §9.4.18.

In this case, the Board made the following findings of fact:

Finding 19. The Applicant presented no evidence that the development which he proposes, consisting of mid-rise apartments with a density approaching 10 units per gross acre, constitutes the minimum variance necessary to make a reasonable use of the property in question.

Finding 20. The Applicant's proposed development containing a density of almost 10 units per acre would have an adverse effect upon other Township residents, particularly

those with residences in the proximity of the proposed development.

After satisfying ourselves that the Board did not capriciously disregard Marino's evidence and thus abuse its discretion in making these findings,[2] we must conclude that such findings justify a reduction in the proposed density.

Although we do not know the precise origin of the *49-unit* limitation, we are satisfied that it represents the Board's attempt to balance the interests of the developer and the public in light of its findings. Consideration of the following factors leads us to conclude that the resulting 49-unit limitation is reasonable under the facts of this case: (1) The proposed 70-unit development (approximately 10 units per acre) would have an adverse effect on the public interest; (2) as zoned, the permitted density is equivalent to 1 unit per 2 acres; (3) Marino failed to show the minimum variance necessary to make reasonable use of the property; and (4) the maximum density permitted in an RDD district in which the proposed type of development is permitted by the Township is approximately 6 units per acre, or slightly less than the 49 units permitted by the Board.

Further, we find that the Board did not abuse its discretion in, imposing the requirements associated with the RDD type development as found in the Township ordinance. Since every use variance sanctions developments not contemplated by the zoning regula-

---

[2] Marino clearly presented no evidence that a 70-unit apartment complex represented the minimum variance necessary in order to make reasonable use of its property. As to finding 20, evidence indicated that there were no firm plans regarding water supply and sewage disposal for the planned development. Further, there was concern that an appropriate buffer zone be situated between the planned development and the single-family rsidences bordering the property to the rear.

tions for the property involved, the imposition of standards reasonably related to the proposed use has been found to be proper. *See, e.g., H. A. Steen Industries, Inc. v Zoning Hearing Board of Bensalem Township, supra; Miller v. Upper Dublin Township,* 84 Montg. 156 (1964). The RDD ordinance which was introduced into evidence provides standards governing the type of multifamily residential development proposed by Marino, standards which the Township in its legislative judgment has established are appropriate to protect the public health, safety, and welfare. Maintenance of such standards in this case provides a reasonable basis for the imposition of the RDD condition, especially where Marino has not indicated an inability to comply with the requirements.

Marino's reliance upon cases in which conditions were reversed by the courts on the basis of insufficient evidence in the record to support imposition of the conditions is misplaced.[3] These cases involve applications for a special exception in which, contrary to the procedure governing the request for a variance, the protestants bear the burden of showing an adverse impact on the public interest which justifies the condition imposed to lessen the harmful effect of a use which is essentially permitted by the ordinance. For this reason, as well as because of the facts involved, the cases relied upon by Marino on this issue are distinguishable. In *Appeal of Humble Oil & Refining Co.,* 34 Leh. L.J. 249 (1971), involving a variance application, the court noted that a condition must have a basis in the evidence, which requirement has been met in this case.

---

[3] *See Middleton Motels, Inc. v. Zoning Hearing Board of Middletown Township,* 61 Del. Co. Rep. 508 (1974) ; *Kenneson v. Whitemarsh Township,* 97 Montg. 191 (1973) ; *Brandywine Youth Club, Inc. v. Zoning Hearing Board,* 60 Pa. D. & C. 2d 290 (C.P. Del. Co. (1972)) ; *Wasson v. Board of Adjustment,* 17 Chest. 324 (1969).

Finally, Marino challenges the constitutionality of the Township's ordinance on the ground that it does not provide for multifamily housing. This challenge cannot succeed on the basis of the record before us, however, since an ordinance which cured the constitutional defects was pending at the time of Marino's application and was thereafter adopted by the Township within a reasonable time. Under the pending-ordinance doctrine,[4] an ordinance is pending when it has been publicly advertised prior to the date of challenge and is ultimately enacted without substantial change. *See Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 328 A.2d 464 (1974); *Bucks County Housing Development Corp. v. Township of Plumstead,* 25 Pa. Commonwealth Ct. 354, 361 A.2d 447 (1976); *Schlanger v. Buckingham Township Board of Supervisors,* 29 Bucks 280 (1976).

Here, a legal advertisement appeared on July 21, 1977, and three meetings were held concerning the amended ordinance prior to Marino's application of November 7, 1977. The amended ordinance was subsequently enacted, with only minor changes, on March 20, 1978. The authority cited by Marino to support its position can be easily distinguished. In *FPA Corp. Appeal,* 25 Pa. Commonwealth Ct. 221, 360 A.2d 851 (1976), the Township enacted a substantially different amendment from the one advertised. In *Highley v. East Whiteland Township,* 28 Pa. Commonwealth Ct. 313, 368 A.2d 914 (1977), the Township waited over 2 years from the date of the advertisement before enacting the ordinance. The circumstances here lead us to conclude that the Township acted with reasonable dispatch.

Order affirmed.

---

[4] For a full discussion of the pending-ordinance doctrine, see Annot., 50 A.L.R. 3d 596, 623-32 (1973).

## Order

And Now, this 7th day of February, 1980, the order of the Court of Common Pleas of Bucks County, dated October 31, 1978, which affirmed an order of the Solebury Township Zoning Hearing Board, dated May 5, 1978, is affirmed.

Judge DiSalle did not participate in the decision in this case.